Filed 4/21/21  P. v. Hebert CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TYRELL PAUL HEBERT,<br><br>    Defendant and Appellant. | 2d Crim. No. B303767<br>(Super. Ct. No. 18F-07714)<br>(San Luis Obispo County) |

Tyrell Paul Hebert appeals the judgment entered after a jury convicted him of inflicting corporal injury on a spouse or cohabitant (Pen. Code,[1] § 273.5, subd. (a); count 1), misdemeanor cruelty to a child (§ 273a, subd. (b); count 2), and attempted criminal threats (§§ 422, subd. (a), 664; count 3).  The trial court suspended imposition of sentence and placed appellant on four years probation with terms and conditions including that he serve 240 days in county jail.  Appellant contends the court

---

[1] All statutory references are to the Penal Code.

abused its discretion in denying his motion to reduce counts 1 and 3 to misdemeanors pursuant to section 17, subdivision (b)(3). We affirm.

**FACTS AND PROCEDURAL HISTORY**

Appellant and Jane Doe began dating in 2015 and subsequently had a child together. On August 2018, appellant and Doe were living together in Atascadero with their two-year-old daughter, Doe's 12-year-old daughter K., and appellant's three children from a prior relationship. That morning, Doe called 911 and reported that "[my] boyfriend . . . stormed in[to] my house, hit me, [and] threw me to the ground." Doe also said that appellant had just left in his van. When asked for appellant's name, Doe began crying, said "nevermind[,] I'm fine," and hung up.

Atascadero Police Officer Ronnie Overacker was dispatched to Doe's residence to investigate. Doe told Officer Overacker that she and appellant had gotten into an argument the prior evening. That morning, appellant became upset and threw a video game console out the window, poured water on Doe's laptop computer, and ransacked their bedroom. Appellant left the house and Doe "locked the door and said you need to go and calm down for a little bit."

Appellant re-entered the house through a window, woke up his three eldest children, and said "let's go." Doe asked appellant to give her the keys to a vehicle they had recently purchased with her money. Appellant replied "no[,] fuck you" and pushed Doe, causing her to fall on a couch. Doe asked, "this is how you are going to act in front of the children?" Appellant punched her in the legs with his fists and stepped on her toes. Doe stood up, grabbed a toolbox in an attempt to block appellant from

2

continuing to assault her, and told appellant to stop. The children "were right there and he just was yelling and . . . swinging" his fists at Doe. Appellant grabbed Doe's neck, threw her to the ground, and held by her by the throat as he said "don't fuck with me. You're going to see what's going to happen." Appellant eventually let go of Doe and left in his van with his three eldest children. As a result of the assault Doe suffered injuries to her foot, collarbone, elbow, and ribs.

K., who witnessed the altercation, testified and gave a virtually identical account of the incident. K. added that when appellant pushed Doe onto the couch, Doe's elbow struck K.'s hip. K. was crying and tried to prevent appellant from continuing to assault Doe. Appellant and Doe's two-year old daughter, who was also present, was crying and screaming "stop."

The day after the incident, Doe woke up and noticed that the vehicle she had recently purchased was missing. When Doe returned home from work later that day, she discovered that the residence had been broken into and ransacked. Food was strewn everywhere, her clothes were cut up and stuffed in the garbage disposal, and her shoes were thrown away. Other clothing, shoes, pictures and books had been thrown in the bathtub and some type of oil had been poured on them. Her desktop computer was smashed, and her laptop computers were missing. All of the items belonging to appellant's three eldest children were gone. "I'm going to kill you" was written on a mirror in Doe and appellant's bedroom.

Prior to sentencing, appellant filed a motion to reduce counts 1 and 3 to misdemeanors pursuant to section 17, subdivision (b)(3). Appellant contended among other things that the motion should be granted because he had no prior criminal

3

history, reducing his convictions to misdemeanors would not impact public safety, and felony convictions would negatively impact his ability to gain employment in the future. Appellant also disputed that the inflicting of corporal injury involved great violence or bodily harm, which was identified in the probation report as a factor in aggravation.

After indicating it had read and considered the probation report, Doe's victim impact statement, and appellant's written motion, the court stated: "I appreciate . . . the impact of a felony conviction on [appellant's] ability to work. . . . [T]here was a 17(b) motion made after the preliminary hearing, which I heard . . . [and] denied. But this case went to a jury, there were instructed on all the lesser included offenses, and all 12 of them concluded that [appellant] had violated 273.5(a) as a felony and the . . . attempted 422 as a felony."

The court continued: "I appreciate that [appellant] has a limited criminal history and that he's always been to court and that his demeanor has always been professional. I have no issues with how he conducted himself here in the courtroom. The challenge I have, though, . . . [is that] I heard the testimony from Jane Doe. There was a 12-year-old girl . . . who also testified. She's the victim on Count 2 . . . . I recall testimony that there were hands put on the neck. I would agree that the injuries weren't as egregious as I've seen in other cases, but the incidents in question all occurred in front of children, and I believe a child as young as two years old." The court added: "I know that at some point . . . [appellant] can petition the court for a 17(b) reduction, depending on how well he does on probation, and based on what you're telling me, it sounds like he is taking this

matter very seriously and he's already enrolled in classes and has taken some classes already."

The prosecutor responded that appellant's lack of a prior criminal history was not particularly meaningful because Doe indicated that appellant had abused her in the past. The prosecutor also argued that the facts of the offenses were sufficient to warrant felony convictions. The prosecutor went on to note: "The only thing that changed between what the Court heard at [the] prelim and at trial is Jane Doe's explanation as to why she minimized what had happened. And she had indicated [at trial] that everything she told [the] officer . . . was true, so only more evidence to support what had happened came out at trial. So, I believe that this Court in properly denying the 17(b) at [the] prelim[inary] only has more evidence to justify denying a 17(b) at this point." The court proceeded to deny the motion.

## DISCUSSION

Appellant contends the court abused it discretion in denying his motion to reduce counts 1 and 3 to misdemeanors. We disagree.

Section 17, subdivision (b), provides: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] . . . [¶] (3) When the court grants probation to a defendant [without imposition of sentence] and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

5

Trial courts possess broad discretion in determining whether to reduce a "wobbler" to a misdemeanor pursuant to section 17, subdivision (b).  (*People v. Bonilla* (2018) 29 Cal.App.5th 649, 660-661.)  The factors relevant to this inquiry "may include those relevant to sentencing decisions, such as the circumstances of the offense, the defendant's appreciation of and attitude toward the offense, and the defendant's character as evidenced by the defendant's behavior and demeanor at the trial." (*People v. Mullins* (2018) 19 Cal.App.5th 594, 611.)  A trial court abuses its discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision."  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  Our review of such decisions is highly deferential. Appellant bears the burden of showing that the court's decision was irrational or arbitrary, and in the absence of such a showing the decision will not be disturbed on appeal.  (*Bonilla*, at p. 661.)

Appellant contends the challenged order was an abuse of discretion because "[i]t is clear from the record . . . that the trial court did not appreciate the power to grant [the motion] based upon the erroneous finding that the jury found appellant guilty of felony offenses."  We are not persuaded.  When considered in context, the court's comments merely reflect its understanding that the grounds for denying the motion brought at sentencing were even stronger than the grounds for denying the motion brought at the conclusion of the preliminary hearing.  As the prosecutor noted, Doe's testimony at trial was significantly more damaging to appellant's position than her testimony at the preliminary hearing.

Moreover, the court's additional comments make clear its understanding that it had the discretion to grant the motion

notwithstanding the jury's verdicts.  In arguing to the contrary, appellant minimizes the seriousness of the offenses as well as their impact on Doe and the two young children who witnessed the assault.  Appellant also avoids any mention of the probation report, which indicates that he had not accepted responsibility for his actions and "did not exhibit any guilt or remorse regarding the matter or the victim."  Because appellant has failed to meet his burden of proving that the court's decision to deny his motion was irrational or arbitrary, his claim that the ruling amounts to an abuse of discretion also fails.  (*People v. Mullins*, *supra*, 19 Cal.App.5th at p. 612.)

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

7

Hernaldo J. Baltodano, Judge

Superior Court County of San Luis Obispo

_____

Earl E. Conaway, III, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.